**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

BECKY WRIGHT and ERNEST J.    )
WRIGHT,                         )
                             )
           Plaintiffs,        )
                             )
v.                             )     Case No. 06-4183-CV-C-NKL
                             )
AMERICAN HOME PRODUCTS     )
CORPORATION, et. al.,          )
                             )
          Defendants.      )

### DEFENDANT WYETH'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' ERRATA SHEET

Defendants (collectively, "Wyeth") submit these Suggestions in support of Wyeth's

motion pursuant to Fed. R. Civ. P. 56(e) and 30(e) to strike the Witness Errata Sheet submitted by

Plaintiff Becky J. Wright.

### <u>Preliminary Satement</u>

Mrs. Wright has been deposed twice in this case; first on December 4, 2006 and briefly

again, by leave of Court, on March 5, 2008. In both of her depositions, Ms. Wright testified that

she had kept a diary or calendar in which she contemporaneously recorded, among other things,

the date on which she stopped using diet drugs and the onset and nature of symptoms she started

to experience after she took them. The two issues addressed in her calendar — her duration of use

and the time between her cessation of diet drug use and her development of symptoms of PPH —

are pivotal issues in this case. According to her sworn testimony at both depositions, however,

she destroyed these calendars a few weeks before her first deposition because, she said, she did

not want her daughter to see them. Ms. Wright's testimony was clear and without confusion on

this point.

On April 3, 2008, Plaintiffs served an "errata sheet" for the March 5 deposition that purported to materially alter Ms. Wright's prior testimony about the circumstances under which the calendars were destroyed. She sets forth a self-serving narrative that bears no relation to the either the question asked or her original response on the record, and which contradicts her prior testimony under oath. Plaintiffs' proposed "clarification" is, in fact, a wholesale revision of Mrs. Wright's testimony, and seeks to create "sham" issues of fact regarding her admitted spoliation. Rule 30(e) permits a deponent in certain circumstances to make limited corrections to the record, not to recreate or contradict testimony given under oath. Because Plaintiffs' errata sheet goes beyond the permissible purposes of Rule 30(e), and is nothing more than a "sham affidavit," it should be stricken from the record.

## BACKGROUND

As the Court knows from multiple briefs and motions in this case, both sides' experts agree that the risk of PPH increases the longer a patient uses the drug. That data comes from the IPPHS. The IPPHS also demonstrates, in Wyeth's view, that when symptoms of PPH do not develop within a year after cessation of diet drug use, the user's risk of PPH returns to background levels. In Mrs. Wright's case, these two issues — how long she took diet drugs and the length of time between her cessation of use and her development of symptoms of PPH — are critical.

Ms. Wright testified that since 1996 she has kept a personal diary — in the form of a calendar — in which she contemporaneously noted the course of her treatment with diet drugs and the onset of symptoms she attributes to pulmonary hypertension. *See* Wright 12/4/06 Tr., 13:10 to 14:11 (Ex. A); Wright 3/5/08 Tr., 40:25 to 44:21 (Ex. B). Ms. Wright made weekly and bi-weekly entries in her diary in which she specified, among other things, individual office visits with

treating physicians[1]; any symptoms Ms. Wright experienced at the time she was taking Pondimin[2]; as well as the timing, nature, and degree of her symptoms.[3] And, perhaps most importantly, Ms. Wright noted in her diary the date on which she stopped taking Pondimin:

> Q. And would you have noted in your calendar when you stopped using diet drugs?
>
> A. Yes.

Wright 3/5/08 Tr., 44:19-44:21. Ms. Wright kept such diaries for "the past 20 years." Wright, 12/4/06 Tr., 14:6-8.

Pharmacy records indicate Mrs. Wright received a single prescription for 63 Pondimin pills on April 11, 1996.[4] It is undisputed that Mrs. Wright stopped taking the drug sometime before she had finished her prescription. A notation in a December 2001 medical record by one of her treating physicians in Jefferson City reflects that she took the drug for less than one week.[5] Additionally, two separate entries made by two separate doctors at the Mayo Clinic in June 2002, where she was being evaluated for pulmonary hypertension, both indicate that Mrs. Wright told them she took the drug for one week.[6] In September 2002, another Jefferson City doctor recorded in her medical records that Mrs. Wright used Pondimin for one month.[7] All told, four separate

---

[1] *See* Wright 3/5/08 Tr., 44:5 - 44:11.

[2] *Id*. at 44:15 - 44:18.

[3] *Id*. at 41:12 - 41:13; 43:12- 43:25.

[4] *See* Jefferson City Kmart Pharmacy Records, at 1 (Ex. C).

[5] *See* December 7, 2001 Jefferson City Medical Group Radiology Report (handwritten notation of "Fen-Phen took less than1 week") (Ex. D).

[6] *See* June 14, 2002 Record of Joseph Murphy, MD (Ex. E); June 14, 2002 record of Nicholas Vlahakis, MD (Ex. F).

[7] *See* September 30, 2002 Record of Gracia Nabhane, MD, Capital City Medical Associates, at 1 (Ex. G).

doctors recorded — based on histories taken from Mrs. Wright — that her prior use of Pondimin ranged from less than a week to, at most, one month.

In 2006, however, after this case was filed, Mrs. Wright began for the first time to claim that she now remembered she took Pondimin for about two months. She claimed this in the form of an affidavit and in her deposition testimony.[8] Not a single contemporaneous medical record or notation by Mrs. Wright reflects this purported two-month use.

The duration of Mrs. Wright's use of Pondimin is important because even her own expert witness, Dr. Shelley Shapiro, concedes that the risk of PAH is related to length of use and, in particular, that she could not say a single week's use could have caused Mrs. Wright's PAH.[9] While Mrs. Wright's treating doctors at the Mayo Clinic have *not* concluded that even two *month's* use of Pondimin would have caused her PAH, whether she took it for a week or for two months is, at the very least, a significant point for cross-examination of Plaintiffs' experts. According to her own testimony, however, she destroyed contemporaneous, written evidence that would have established when she stopped using Pondimin — and thus, how long she took it.

The onset of her alleged symptoms is also important in this case, although for a different reason. The epidemiological evidence on the risk of PAH with diet medications shows that the excess risk of contracting PAH declines to statistically insignificant levels a year after the drugs are discontinued. Thus, in evaluating whether diet drugs might have caused a person's PAH, it is

---

[8]  *See* Declaration And Affidavit of Becky J. Wright, ¶¶ 2, 5 (Ex. H).

[9] *See* Deposition of Shelley Shapiro (Attached as Exhibit I), at 63:2-15 (agreeing that the odds ratio of 1.8 for use of three months or less was not "statistically significant"); at 55:16-56:13 ("I don't know if somebody took it for two weeks … their disease would have progressed. And I don't know the answer to that and I don't claim to."); *see also* Wyeth's Suggestions In Support of Its Motion To Preclude Plaintiffs' Experts From Testifying That Plaintiff's Short Term Use Of Pondimin Was The Proximate Cause Of Her Pulmonary Hypertension, pp. 6-14.

important to know, if possible, whether the person's symptoms first developed more or less than a year following discontinuance of the drugs. In this case, there will be conflicting evidence about when Mrs. Wright's symptoms attributable to PAH first began. Yet, unfortunately, contemporaneous evidence created by Ms. Wright on these two key issues is no longer available, because it has been destroyed.

By her own admission, Ms. Wright destroyed the diaries after this case was filed and before she was first deposed by Wyeth's counsel. When this action was conditionally transferred to the Eastern District of Pennsylvania, and coordinated in the national MDL handling all diet drug cases, Plaintiffs became immediately bound by the MDL's order for preservation of documents.[10] This order enjoined Plaintiffs and their counsel from "altering, destroying or permitting the destruction of any Document" that is "relevant to any claim or defense at issue in any case consolidated under MDL 1203, or appears reasonably calculated to the discovery of [admissible] evidence …." *Id*. Moreover, as required by MDL Pretrial Order 2903, Mrs. Wright completed a Plaintiffs' Fact Sheet on August 2, 2006, which required her, among other things, to produce to Wyeth, all "documents regarding weight gain and weight loss, such as … **diaries of weight loss efforts, notes or descriptions** of medications or other substances used to control or reduce your weight, or the like." *See* Plaintiff's Fact Sheet (Ex. K) (emphasis added). Mrs. Wright did not produce her diaries at that time, but declared "under penalty of perjury" that she had "supplied all of the documents requested." *Id*. Furthermore, Plaintiffs were served with a deposition notice for Ms. Wright on November 17, 2006, which again requested production of "[a]ny **diaries or other documents which record or reflect the deponent's use** or purchase of

---

[10] *See* Pretrial Order No. 20, *In re Diet Drugs Product Liability Litig.*, MDL Docket No. 1203 (E.D. Pa.), 990 F. Supp. 834 (J.P.M.L. 1998) (Ex. J).

fenfluramine, dexfenfluramine or phentermine pills."[11]   Rather than produce any diaries as

requested, and be questioned on their contents, Ms. Wright testified that she instead destroyed

them:

> Q.  By any chance have you kept diaries or notes -- personal notes
> relating to your physical condition since you've been diagnosed with
> your current problems?
>
> A.  At -- at one time I did.  And then -- but I don't  have them
> anymore.
>
> **I destroyed them.**

Wright, 12/4/06 Tr., 13:10-14:8.  Ms. Wright testified in both of her two depositions in this case

that she destroyed her diaries only a few weeks before her first deposition was to begin.  *See*

Wright 3/5/08 Tr., 41:16-41:20; Wright, 12/4/06 Tr., 13:10-14:8.  Mrs. Wright's counsel, of

course, was present at both of her depositions and had an ample opportunity to have her correct

any testimony that she believed was factually incorrect or where she felt she had misspoken.  Yet

he failed to do so at the time.

Then, on April 3, 2008, Wyeth received a purported "Witness Errata Sheet" executed by

Ms. Wright and accompanied by her affidavit.  *See* Ex. M.  In the errata sheet, Ms. Wright seeks to

alter the last response in the following series of questions posed on March 5 regarding the

destruction of her  diaries:

**Questioning And Original Response:**

> Q.  Did you start keeping the calendar after you started using diet
> drugs or before then?
>
> A.  I started keeping them when I started feeling bad.

---

[11] First Amended Notice of Deposition Of Becky J. Wright, ¶ 3.  (Ex. L) (emphasis added).

Q.  Do you recall about when that was?

A.  That would have been, like, in 1996.

Q.  And in your prior deposition, you said you had destroyed the materials very recently, by that did you mean within a few weeks of your deposition?

**A.  Yes.  Yes.  Without -- if I had known I needed them, I would have kept them.**

**Proposed Altered Response:**

A.  Yes.  Yes.  **I didn't keep all my Hallmark Calendars for 10 years.  I got rid of the 1990's ones many years ago, probably 5 years ago or more.  I would probably only had a couple years of notes left in 2006.  I did not keep calendar notes of when I got rid of old calendar notes, this is my best memory.**

Ex. M, p. 4; *cf.* Wright 3/5/08 Tr., 41:19.[12]  Ms. Wright's  reason for making this significant

change to her prior testimony was one word:  "clarification."  Ex. M, p. 4.

Although Ms. Wright now seeks to "clarify" her testimony after the fact, she had the

opportunity to do so, but did not.  Plaintiffs' counsel cross-examined Ms. Wright following

Wyeth's examination, but he chose not to address the diary, its contents, or the circumstances

surrounding its destruction at all.  *See* Wright 12/4/06 Tr., 89:4-175.

Indeed, it is not surprising that her counsel saw no reason to inquire about these

circumstances.  Ms. Wright's original testimony is a clear, unequivocal admission that she

destroyed relevant evidence.  Her original response was to a question about her destruction of "the

materials" referred to in the immediately preceding questions.  The "materials" in question were

the diaries she said she started keeping in 1996 — the year she took Pondimin.  Thus, when she

was asked to confirm that she had destroyed these "materials" within  a "few weeks" prior to her

---

[12] Ms. Wright's errata were presented in freehand (*see* Ex. M, p. 4), and this is counsel's best interpretation of her handwriting.

first deposition in December 2006, her affirmative response ("Yes. Yes.") was completely clear and unambiguous.

## ARGUMENT

Federal Rule of Civil Procedure 30(e) does not afford Plaintiffs with a procedure to retract (or simply to soften) her prior sworn testimony. Rule 30(e) allows deponents to make corrective — not contradictory — changes to their testimony. Where, as here, a deponent uses a Rule 30(e) affidavit to alter or contradict her prior testimony, the "sham affidavit" must be stricken from the record. *See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005); *Burns v. Board of County Commissioners*, 330 F.3d 1275 (10th Cir. 2003); *Garcia v. Pueblo Country Club,* 299 F.3d 1233, 1242 n.5 (10th Cir. 2002); *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir. 2000); *Greenway v. Int'l Paper Co.,* 144 F.R.D. 322, 325 (W.D. La.). Plaintiffs' purported "errata sheet" should thus be stricken by the Court for several independent reasons. [13]

*First*, Ms. Wright gave a lucid response to a very straightforward question, and there is no basis for further clarification of her answer. When asked if she destroyed the "materials" within a few weeks of her deposition, Ms. Wright repeated: "Yes. Yes." *See* Wright 3/5/08 Tr., 41:19.

---

[13] The Eighth Circuit has long recognized the Court's inherent power to strike an affidavit that contradicts a witness' sworn deposition testimony. *See*, *e.g.*, *Grain Co., Inc. v. Blackley,* 932 F.2d 1563, 1568 (8th Cir.1991); *Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 289 (8th Cir.1988) (similar); *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361, 1365-6 (8th Cir.1983) ("[a] party should not be allowed to create issues of credibility by contradicting his own earlier testimony").

Although the Eighth Circuit does not appear to have squarely applied these principles under Rule 30(e), the approach of the Ninth, Tenth and Seventh Circuits constitute the majority of the circuits that have, and represent the modern trend of authority that this Court should follow. *See,* e.g., *Wigg v. Sioux Falls School Dist.*, 274 F. Supp.2d 1084, 1090 (D.S.D. 2003) (noting that "the Eight Circuit has not squarely addressed the issue," but embracing the "opinions from the Tenth and Seventh Circuits."), *aff'd in part and rev'd in part on other grounds*, 382 F.3d 807 (2004); *SEC v. Parkersburg Wireless,* 156 F.R.D. 529, 535 (D.D.C. 1994) (noting the trend of authority to apply the sham affidavit test under Rule 30(e) to protect against the "potential for abuse").

Plaintiffs do not claim that Ms. Wright's response was mistaken or incorrect. Rather, Plaintiffs seek to replace Ms. Wright's one-sentence apology ("If I had known … I would have kept them"), with a five sentence narrative that bears no relation to either the question asked or her original testimony. Such non-responsive, self-serving narratives are beyond the scope of Rule 30(e), and therefore must be stricken. *See Hambleton*, 397 F.3d at 1225; *Summerhouse v. HCA Health Servs.*, 216 F.R.D. 502 (D. Kan. 2003) (Rule 30(e) allows changes, not "wholesale additions that bear no relation to the question asked").[14]

*Second*, Plaintiffs' purported "clarification" improperly contradicts other portions of Ms. Wright's testimony. For example, Plaintiffs' revisions imply that Ms. Wright kept a diary for "10 years" (Ex. M, p.4 ), but she testified under oath that she kept a diary for "the past 20 years." (Wright 12/4/06 Tr., 14:6-8). Although the revisions state that she threw away only "a couple years of notes," and that she had previously "got[ten] rid of the 1990's ones" (Ex. M, p. 4), Ms. Wright testified that "<u>some</u> of the ones I threw away were real recent," implying that she threw away older and more recent diaries all at the same time. (Wright, 12/4/06 Tr., 14:2-3) (emphasis added). Ms. Wright does not claim that her testimony was mistakenly transcribed. *See Thorn,* 207 F.3d at 389 ("a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription"). And, Rule 30(e) does not permit her to make alterations that contradict her prior testimony. *See Garcia*, 299 F.3d at 1242 n.5 ("[w]e do not condone counsel's allowing for material changes to deposition

---

[14] Indeed, Ms. Wright's original response is obviously correct and requires no further clarification, because Ms. Wright echoed the same sentiments elsewhere during her deposition. *See* Wright 12/4/08 Tr., 13:14-16 ("I destroyed them … <u>I wished I hadn't.</u>") (emphasis added).

testimony and certainly do not approve of the use of altered testimony that is controverted by the original testimony").

*Third*, Rule 30(e) requires Ms. Wright to give a statement of reasons explaining her corrections, which should be detailed enough to "permit[] an assessment concerning whether the alterations have a legitimate purpose." *See Hambleton*, 397 F.3d at 1225-25. Plaintiffs' statement consists of a single word, "clarification," without any description why her answer required any clarification or how her errata sheet clarifies what she previously said at all. (Ex. M, p. 4). Such conclusory statements are insufficient to meet the requirements of Rule 30(e). *See Hambleton*, 397 F.3d at 1225-25 ("[t]he absence of any stated reasons for the changes supports the magistrate judge's concern that the 'corrections' were not corrections at all, but rather purposeful rewrites."); *Summerhouse*, 216 F.R.D. at 510.

*Finally*, Plaintiffs' "errata sheet" simply creates "sham" issues of fact regarding Ms. Wright's destruction of evidence, possibly in anticipation of a motion seeking sanctions. *See Burns*, 330 F.3d at 1275; *Hambleton*, 397 F.3d at 1225-25; *see also Summerhouse*, 216 F.R.D. at 510 ("[n]othing in the language of Rule 30(e) that suggests a different application of the rule based upon the pendency of different types of motions.").

Ms. Wright admitted to destroying evidence — just a few weeks before she was deposed — that was highly relevant to issues of duration of use and onset of symptoms that will be disputed in this action. Rule 30(e) does not turn a deposition into a "take home examination," where Plaintiffs can consider the implications of Ms. Wright's testimony, and strategize how best to craft her responses to head-off any resulting damage to their case. *Garcia*, 299 F.3d at 1242 n.5. Nor does Rule 30(e) provide Plaintiffs with the opportunity to alter prior testimony to bolster pending motions, or to confuse the facts to conceal wrongful conduct.

## CONCLUSION

For the reasons stated above, Wyeth respectfully requests the Court to strike Plaintiffs

Errata Sheet.

Respectfully submitted,


 /s/ Anand Agneshwar
**Arnold & Porter LLP**
399 Park Avenue
New York, NY  10022-4690
(212) 715-1000

And

Steven G. Reade
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C.  20004
(202) 942-5000

  /s/ Chris Rackers
**Schreimann, Rackers, Francka**
**& Blunt, L.L.C.**
2316 St. Mary's Boulevard - Suite 130
Jefferson City, MO  65109
573-634-7580

Dated:  April 7, 2008

## Certificate of Service

I hereby certify that on April 7, 2008, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which sent notification of such filing to:

Keith M. Jensen, Esq. and David M. Petersen, Esq., attorneys for Plaintiff.


____/s/ Brad C. Letterman_____
ATTORNEY FOR DEFENDANT WYETH